**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTOR HIGUERA,<br><br>                              Petitioner,<br><br>v.<br><br><br>KELLY MARTINEZ, Sheriff,<br><br>                              Respondent. | Case No.:  3:23-cv-1083-BTM-KSC<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND**<br><br>**(2) DENYING CERTIFICATE OF APPEALABILITY** |

## I.      INTRODUCTION

Before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet.") filed by Victor Higuera, ("Higuera" or "Petitioner"), a state prisoner proceeding pro se. ECF No. 1. In his Petition, Higuera challenges his San Diego Superior Court conviction and sentence for transporting a controlled substance for sale in case number SCE423445. *See id.* at 1.[1] The Court has reviewed the Petition (ECF No. 1), the Answer and Memorandum of Points and Authorities in Support of the Answer (ECF

---

[1]  Page numbers for the Petition, Answer, Memorandum of Points and Authorities in Support of the Answer cited in this Order refer to those imprinted by the court's electronic case filing system.

Nos. 6, 6-1), the lodgments (ECF No. 7), Petitioner's Traverse (ECF No. 8), and all the supporting documents submitted by both parties. For the reasons discussed below, the Court DENIES the Petition and DENIES a certificate of appealability.

## II.   PROCEDURAL HISTORY

On August 22, 2022, Higuera pleaded guilty in San Diego County Superior Court to one count of transporting methamphetamine for sale, in violation of Cal. Health & Safety Code § 11379(a). ECF No. 7-1 at 1. On September 28, 2022, the trial court sentenced Higuera to three years in prison. *Id.* at 5.

Higuera did not appeal his conviction. But on March 20, 2023, he filed a petition for writ of habeas corpus in the California Supreme Court. ECF No. 7-2. In it, he raised a single claim—his right to equal protection has been violated by his sentence to county jail and the application of California's scheme for awarding custody credits. *See id*. at 3–11. The California Supreme Court denied the petition without comment or citation on April 26, 2023. ECF No. 7-3.

Higuera filed his federal petition for writ of habeas corpus in this Court on June 5, 2023, raising the same claim he raised in the state supreme court. ECF No. 1. Respondent filed an Answer on July 31, 2023. ECF No. 6. Petitioner filed his Traverse on September 12, 2023. ECF No. 8.

## III.   SCOPE OF REVIEW

Higuera's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only

whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine

whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

## IV.   DISCUSSION

As noted above, Higuera raises a single claim in his federal petition—that his constitutional right to equal protection has been violated by his sentence to county jail. ECF No. 1 at 6. Specifically, Higuera argues he is unable to earn the same amount of custody credits in county jail as some inmates serving sentences in state prison. *Id.*; *see also* Traverse at 3–4. Higuera raised this claim in his habeas petition to the California Supreme Court and it was denied without comment or citation. ECF Nos. 7-2, 7-3. Thus, because there is no reasoned decision from the state court, this Court must conduct an independent review of the state court record to determine whether the denial of the claim was contrary to or an unreasonable application of clearly established law. *See Himes*, 336 F.3d at 853.

Before addressing Higuera's claim, a brief overview of the relevant sentencing law is helpful. California's Criminal Justice Realignment Act of 2011 ("Realignment Act"), "significantly change[d] the punishment for some felony convictions" in California. *People v. Scott*, 58 Cal. 4th 1415, 1418 (Cal. 2014); *see also Mainez v. Gore*, 2017 WL 6453595, at *1 (S.D. Cal. Dec. 18, 2017). In passing the Realignment Act, the legislature stated: "Criminal justice policies that rely on building and operating more prisons to address community safety concerns are not sustainable, and will not result in improved public safety." Cal. Penal Code § 17.5(a)(3). To address this concern, the legislature found that

3:23-cv-1083-BTM-KSC

"California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices that will achieve improved public safety returns on this state's substantial investment in its criminal justice system." Cal. Penal Code § 17.5(a)(4). It further found that "[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs . . . will improve public safety outcomes among adult felons and facilitate their reintegration back into society." Cal. Penal Code § 17.5(a)(5). To that end, the Realignment Act shifted responsibility for housing and supervising certain "low-level felony offenders" from the state to the individual counties. *See* Cal. Penal Code § 1170(h)(3). Thus, "once probation has been denied, [California] felons who are eligible to be sentenced under realignment . . . serve their terms of imprisonment in local custody rather than state prison." *People v. Cruz*, 207 Cal. App. 4th 664, 671 (Cal. 2012). Persons convicted of more serious and/or violent felony offenses not subject to section 1170(h) are generally sentenced to state prison. *Id.*

Pursuant to the Realignment Act, Higuera's felony conviction for one count of transporting methamphetamine for sale subjected him to the provision under which he is to serve his sentence in county jail, as opposed to a state prison. *See* Cal. Health & Safety Code § 11379(a) (stating persons convicted of that section "shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code"); Cal. Penal Code § 1170(h) (stating such offenses "shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years"). Petitioner argues this amounts to an equal protection violation because inmates who, like Higuera, are sentenced to county jail are only able to earn custody credits up to 50% of the time served, *see* Cal. Penal Code § 4019(f), while some state prison inmates can earn credits up to a rate of 66% of time served, *see* Cal. Code Regs. § 3043.2(b)(5).[2]

---

[2] The only inmates eligible to earn credits at a 66% rate are: (1) inmates assigned custody designations "Minimum Custody A" or "Minimum Custody B," (2) inmates who have

The Equal Protection Clause requires, generally, that similarly situated defendants be treated similarly. *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Equal protection is violated by intentional discrimination against a person based on his or her membership in a protected class, *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or by intentional treatment of a member of an identifiable class differently from other similarly situated individuals without a rational basis for the difference in treatment, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here, because no protected class is implicated, the rational basis test applies. *See McGinnis v. Royster*, 410 U.S. 263, 269–70 (1973) (applying rational basis review to state statutory scheme that treated inmates held in county facilities differently than those held in state facilities). In the prison context, such equal protection claims are "judged by a standard of reasonableness—specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'" *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

First, Higuera has not established that individuals sentenced to state prison and those sentenced to county jail under California's Realignment Act are similarly situated. Equal protection does not extend to individuals who are, in fact, differently situated. *Michael M. v. Super. Ct. of Sonoma Cnty*, 450 U.S. 464, 469 (1981) (citations omitted); *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection."). When defining a class subject to legislation, the distinctions drawn must have "some relevance to the purpose for which the classification is made." *Estelle v. Dorrough*, 420 U.S. 534, 539 (1975). Here, in passing the Realignment Act the state legislature specifically differentiated between two groups of

---

completed the training required to be assigned as a firefighter to a Department of Forestry and Fire Protection fire camp or as a firefighter at a Department of Corrections and Rehabilitation firehouse or (3) inmates who are housed at a Department of Forestry and Fire Protection fire camp in a role other than firefighter. *See* 15 Cal. Code Regs. § 3043.2(b)(5).

felons based on the nature of underlying conviction and criminal history. The stated purpose for this distinction was to improve "public safety outcomes among adult felons" and facilitating "their reintegration back into society" by allowing more individuals to serve their sentences in local custody. *In re Cuenca*, 80 Cal. App. 5th 194, 201 (Cal. Ct. App. 2022). In *Cuenca*, the court concluded inmates sentenced to county jail and those sentenced to state prison under the Realignment Act were not similarly situated, noting that "[t]he Legislature explicitly excluded non-low-level offenders convicted of serious, violent, or sex offenses from being designated into local prisons." *Id.* Given this deliberate distinction, this Court also finds the two groups are not "similarly situated."[3] *McQuery v. Blodgett*, 924 F.2d 829, 834–35 (9th Cir. 1991) (citing *Norvell v. Illinois*, 373 U.S. 420 (1963) ("Inmates are not entitled to identical treatment as other inmates merely because they are all inmates.")).

In addition, even assuming arguendo that inmates sentenced to county jail and inmates sentenced to state prison are "similarly situated," Higurera has failed to satisfy his burden to show a lack of a rational basis for the differential treatment. Under the rational basis standard, a state law will survive an equal protection challenge if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Armour v. City of Indiannapolis*, 566 U.S. 673, 681 (2012) (internal quotation omitted). The inquiry is not whether the challenged action "actually furthered a

---

[3] Furthermore, despite his assertion to the contrary, Higuera has not shown that had he been sentenced to state prison, he would have been eligible for "66% time off [his] sentence." *See* ECF 1 at 3. Petitioner *could* be eligible to earn credits at that rate, but as discussed above, only if he receives a "custody classification" of "Minimum A" or "Minimum B," which would enable him to be assigned to a minimum-security facility or fire camp; or if he completes the training required to be assigned to a fire camp or California Department of Corrections and Rehabilitation firehouse. *See* 15 Cal. Code Regs. § 3043.2(b)(5). Higuera makes no showing he would be eligible for such a classification, which is based on numerous factors, including age, offense, criminal history, gang affiliation, and past conduct. *See* 15 Cal. Code Regs. §§ 3375, 3375.3.

legitimate interest; it is enough the governing body could have rationally decided that the action would further that interest." *Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1095 (9th Cir. 2019). Put another way, to prevail on an equal protection claim, Higuera must "negative every conceivable basis which might support the [government action] that he challenges." *Id.* (quoting *Armour*, 566 U.S. at 681).

Petitioner has failed to meet his burden. As discussed above, the objective of the realignment legislation was to "decrease recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending." *People v. Zamudio*, 12 Cal. App. 5th 8, 13 (Cal. 2017). "The purpose of justice reinvestment is to manage and allocate criminal justice populations more cost-effectively, generating savings that can be reinvested in evidence-based strategies that increase public safety while holding offenders accountable." Cal. Penal Code § 17.5 (a)(7); *People v. Rajanayagam*, 211 Cal. App. 4th 42, 54–55 (Cal. Ct. App. 2012). As such, the Realignment Act distinguishes between individuals convicted of felonies deemed less serious (and which carry relatively short sentences) and those with felony convictions for more serious offenses, and for which an individual is generally sentenced to a longer term of imprisonment. *See* Cal. Penal Code § 1170(h). The distinction made by the California Legislature between individuals who must serve their sentences in county jail as opposed to state prison bears a rational relationship to its legitimate government interests in improving public safety (and health) by avoiding overcrowded state prisons while also saving taxpayer money. *See e.g. Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1048 (9th Cir. 2017) (stating the government has a legitimate interest in public safety). For his part, Petitioner has failed "to negative" these conceivable bases for the distinction and therefore fails to show an equal protection violation. *See Armour*, 566 U.S. at 681; *see also Mason v. Holt*, 2016 WL 6136076, at *7 (E.D. Cal. Oct. 21, 2016) (dismissing prisoner's equal protection challenge with regard to eligibility for work credits because the distinctions made between county and prison custody credits as a result of realignment are "not arbitrary and bear a rational relationship to a legitimate government interest.").

In sum, after an independent review of the record, the Court finds the state court's denial of Higuera's equal protection claim was neither contrary to clearly established law, nor objectively unreasonable. *See Himes*, 336 F.3d at 853; *see also Williams v. Illinois*, 399 U.S. 235, 243 (1970) (noting a mere demonstration of inequality is not enough to establish a violation of the equal protection clause). The Petition is therefore denied.

## V.   CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a). The district court may issue a certificate of appealability if the petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court finds Petitioner has failed to make "a substantial showing of the denial of a constitutional right," and reasonable jurists would not find debatable this Court's assessment of his claims. *See id.* Accordingly, a certificate of appealability is **DENIED**.

## VI.   CONCLUSION

Based on the foregoing, the Court **DENIES** the petition for writ of habeas corpus, and **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  January 11, 2024

Honorable Barry Ted Moskowitz
United States District Judge